In re Phillip W. HARPER, Debtor.

Elmira PRUSINSKI, Plaintiff,

v.

Phillip W. HARPER, Defendant.

Bankruptcy No. B88–65.
Adv. No. B88–175.

United States Bankruptcy Court,
N.D. Ohio, E.D.

Oct. 18, 1988.

Terry E. Muir, Hyatt Legal Services, Maple Hts., Ohio, for plaintiff.

Douglas H. Glenn, Mayfield Hts., Ohio, for defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

The Plaintiff, Elmira Prusinski, loaned her former son-in-law, Phillip W. Harper (Debtor) and her daughter, Carole A. Harper (Carole), $25,000.00 to pay off their existing debts and start an accounting business which was to be operated by the Debtor during their marriage. After the loan was made, the Debtor and Carole were later divorced and repayments on the loan ceased. Following a state court action by the Plaintiff against the Debtor and Carole, wherein judgment was rendered favorable to the Plaintiff, the Debtor was held solely liable for repayment of the loan. Subsequently, the Debtor sought relief in this Court by filing his petition under Chapter 7 to obtain a discharge of his debts, including the judgment rendered by the state court. Herein the Plaintiff seeks a determination of dischargeability of the loan balance. A trial was conducted with due notice having been made upon all parties entitled thereto. Upon an examination of the evidence admitted, trial briefs, testimony and other relevant portions of the record, the following constitutes the Court's findings and conclusions pursuant to Rule 7052, Bankr.R.:

This is a core proceeding under provisions of 28 U.S.C. 157(b)(2), with jurisdiction further conferred under 28 U.S.C. 1334 and General Order No. 84 of this District. The parties hereto entered into a written agreement dated July 11, 1983, wherein the widowed Plaintiff agreed to loan the Debtor and her daughter $25,000.00 from her

life savings. (Plaintiff's Ex. # 5). Specifically, the loan proceeds were to be used in the following manner:

> Proceeds of this loan are to be used for the pay off of all existing debts of Phillip and Carole Harper and balance of funds to be used for the start up of an accounting business to be operated by Phillip Harper. (Ex. # 5).

The agreement containing the above-quoted language, dated July 11, 1983, was drafted by the Debtor and was signed by the Debtor, Carole, and the Plaintiff. As consideration for the loan, the Debtor and Carole agreed to repay the loan at $595.00 per month over a sixty-month period at fifteen (15) percent interest per annum. As further consideration, Phillip and Carole granted the Plaintiff a second mortgage lien on their personal residence.[1] The last paragraph of the agreement provided that the Debtor would remain liable for the loan repayment in the event that his marriage to Carole was dissolved or was terminated by reason of divorce. Carole and the Debtor were divorced on October 15, 1985, following a brief period of separation.

## II.

■ The dispositive issue for the Court's determination is whether the Debtor's conduct respecting the $25,000.00 loan from his former mother-in-law (Plaintiff) renders the debt created thereon nondischargeable under the Bankruptcy Code. In her Complaint, the Plaintiff contends that the "Debtor incurred the debt through false pretenses, false representations, and/or actual fraud, in that [he] misrepresented to Plaintiff the reasons for which he required the loan." She further alleges that, by reason of the misrepresentations, she was induced to make the loan of $25,000.00. Contrary to those allegations, the Debtor contends that he fully satisfied the purpose of the loan and that he is entitled to a discharge of that indebtedness.

The discharge of debts under Chapter 7 is addressed in § 727. Exceptions to a discharge under Chapter 7 are found under provisions of § 523. In pertinent part, § 523 provides:

> (a) A discharge under section 727 ... of this title does not discharge an individual from any debt
>
> > (2) for money ... to the extent obtained by—
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. [11 U.S.C. 523(a)(2)(A)].

The establishment of five elements have generally been required to satisfy the provisions of § 523(a)(2)(A). They are as follows: 1) The Debtor made the representation; 2) at the time he knew they were false; 3) that the misrepresentation was made with an intention and purpose of deceiving the creditor; 4) the creditor relied on the misrepresentation; and 5) the creditor sustained a loss as a proximate result of the misrepresentation. *See, In re Phillips*, 804 F.2d 930 (6th Cir.1986); *In re Gans*, 75 B.R. 474 (Bankr.S.D.N.Y.1987).

*Testimony and Exhibits:*

In order to apply the provisions of § 523(a)(2)(A), an examination of the evidence and the record, generally, is necessary. Upon examination, the Debtor's testimony revealed that he and his former wife received the $25,000.00 loan from the Plaintiff and that he deposited same in his personal checking account. The Debtor's equivocal testimony showed him first stating that the deposit account for the $25,000.00 was Carole's checking account, but he later testified on direct examination that the account was a joint checking account shared by him and Carole. Although both names appear on the account, the Debtor issued most of the checks in Exhibit No. 6, which were issued between July 11, 1983 (the date of the loan) and December 19, 1984. Of remarkable interest, tax returns set forth in Exhibits Nos. 2 and 3 for tax years 1983 and 1984 indicate that the Debtor's occupation was listed as "Real Estate Consultant," not as an accountant although

---

1. As part of Carole's and the Debtor's divorce proceeding, the property was sold at a loss. The Plaintiff received no proceeds from the sale respecting the subject loan.

his cross-examination testimony indicated that in 1983 he solicited clients and held himself out as an accountant. Those tax returns further revealed that his former wife, Carole, had earned wages of $24,004.52 in 1983, while he had no reported income. His 1983 Schedule C reflects a business loss of $5,417.77. The 1984 tax return (Ex. No. 3) reveals that Carole reported earned wages totalling $29,252.11, while the Debtor reported a business income of $2,674.41. Exhibit No. 3 included a 1984 W–2 statement showing the Debtor had nonemployee wages of $1,257.56. Plaintiff's Exhibit No. 4 contains copies of the Debtor's W–2 statements for 1985 and 1986. In 1985, one W–2 form revealed wages of $458.98, while another W–2 for the same year revealed nonemployee compensation of $7,000.00. For 1986, the exhibited W–2 statement for the Debtor revealed wages of $6,016.65. Neither tax return identified the Debtor as an accountant or having an accounting practice.

The Debtor directed the Court's attention to several copies of cancelled checks contained in Plaintiff's Ex. No. 6 and his Exhibit A in support of his contention that he established an accounting business pursuant to his loan agreement with the Plaintiff. Specifically, he addressed thirty-four checks issued by him on the joint checking account revealing payments for newspaper subscriptions, a trade journal subscription, purchase of a briefcase, stationery, unspecified credit card charges, gasoline credit card expense, miscellaneous labor expenses, car payment, user's manual, etc. He testified that he established his accounting business in July of 1983, although none of the checks exhibited by either the Debtor or the Plaintiff reflect office rental payments. Testimony revealed that he initially worked out of his home, but later in 1983 assumed office space with Trademark Realty where he received free rent from August through December of 1983. Beyond that period, his testimony revealed his office rent ranged between $75.00 per month to $150.00 per month with Trademark Realty. None of the checks exhibited by the Debtor or the Plaintiff reflected any office rental payments to Trademark Realty or to any other landlord.

The Debtor offered additional testimony in support of his contention that he complied with the subject loan agreement by paying some $16,000.00 in debts which existed at the time of the loan. As indicated above, the $25,000.00 loaned to the Debtor and Carole was to be used to pay off all existing debts. An examination of the cancelled checks exhibited in Exhibit No. 6 reveals that not all of the existing debts were paid in full even though the Debtor's unrefuted testimony indicated he paid $16,000.00 on debts existing as of the loan agreement date (July 11, 1983). On July 11, 1983, the Debtor testified that he wrote approximately thirty-four checks as payment for personal debts existing as of that date. It is noted that one of the checks, # 2594, was made payable by the Debtor to Ameritrust Company (Acct. # 4447–140–050–500) in an amount of $2,300.00. That particular debt was in existence on July 11, 1983, and was not paid in full with the payment made on July 11, 1983, per the Debtor's testimony (*See* check # 2658.). The same is true respecting a debt owed to Ameritrust (Acct. # 4447–170–494–859), as indicated by payments made on July 25, 1983 (Check # 2622) and on August 29, 1983 (Check # 2668).

Plaintiff's Exhibit No. 1 and the Debtor's testimony indicate that the $25,000.00 loan was deposited in Debtor's and Carole's joint checking account on July 11, 1983, the same date of the loan agreement. Where the Debtor wrote checks to pay the full amount of existing debts, the check memo indicated "paid in full," "Balance as/statement," etc. (*See*, Checks Nos. 2571, 2570, 2569, 2568, 2567, 2577, 2575, 2589, 2586, et al.). As indicated above, it is clear from a review of the checks exhibited and the testimony that not only did the Debtor not pay off all existing debts, he and his former wife created new debts. *See*, Checks Nos. 2809, 2950, 2951). The Plaintiff's and Debtor's testimony revealed that the Debtor and Carole purchased one new car and leased another after their receipt of the $25,000.00. This testimony is unrefuted.

(See Check No. 2720, Ex. No. 6; Cross-exam. of Debtor). Carole leased a new car and made payments thereon to her employer, Ford Motor Credit Corporation, while the Debtor purchased a new car, with his payments being deducted from his wife's payroll check. (Cross-exam., Debtor).

Plaintiff's Exhibit No. 6 also included the amounts repaid on the loan. A total of eleven payments were made by checks issued by the Debtor. Of that number, only six checks were issued for the full amount of the monthly payment, and one of those was returned "N.S.F." None of the remaining five payments were made in the full amount of the monthly payment due. The last payment was made to the Plaintiff on December 19, 1984, in an amount of $50.00.

The Plaintiff's testimony revealed that she received a total of $4,340.00 as repayment on the loan. She cared for the Debtor, and her daughter's child daily and testified that there was no indication that the Debtor ever started an accounting business. Rather, they used her funds for daily living expenses. She further testified that within four months of the loan, both her daughter and the Debtor were driving new automobiles. Although she was not aware of the Debtor's checking account balance at the time she loaned the $25,-000.00, unrefuted testimony revealed that her daughter informed her that they had no money when the loan was made. The Debtor testified, however, there might have been $200.00 in their checking account on July 11, 1983. During the five-month period between July 11, 1983 and December 12, 1983, a total of $29,688.73 in checks were drawn on the Debtor's joint checking account. The Debtor testified that he had funds in no checking account other than the one joint checking account. His joint debts, per his testimony, totalled $16,000.00 which existed prior to July 11, 1983 were paid off by him. He further testified that approximately $9,700.00 in checks drawn related to his business debts.

Notwithstanding the conflicting testimony regarding the nature of work activity engaged by the Debtor in 1983, the minutes of the Debtor's § 341 meeting are relevant. Therein, it is significantly noted that the Debtor responded that he had never been engaged in business. That response was made under oath and was recorded on the Trustee's Record of Examination which the Debtor certified by his signature on February 17, 1988. A review of the Debtor's Schedule A–3 further reveals account balances owed by the Debtor on debts that were in existence at the time of the subject loan. This further refutes his testimony that he paid off all debts in existence at the time of the loan.

III.

In resolving a § 523(a)(2)(A) issue, the burden of proof is upon the party seeking nondischargeability. That burden must be met by a standard of clear and convincing evidence. *Knoxville Teachers Credit Union v. Parkay*, 790 F.2d 490, 491 (6th Cir.1986); *In re Gans*, 75 B.R. 474 (Bankr.S.D.N.Y.1987). Exceptions to dischargeability are to be construed narrowly and in favor of the debtor where reasonable to do so. *Id.; In re Black*, 787 F.2d 503, 505 (10th Cir.1986).

In construing the aforementioned elements of § 523(a)(2)(A) to the findings made herein, the following conclusions are hereby reached:

As noted above, the loan agreement entered into by the Plaintiff and the Debtor was drafted by the Debtor. The representations made by the Debtor were willfully made. In view of the testimony received, an examination of the exhibits and the Debtor's petition schedules, the Debtor's respresentations were made with an intent to deceive the Plaintiff who relied thereon. The Plaintiff reasonably relied upon the Debtor's representations and loaned the Debtor and her daughter $25,000.00 from her life savings. This determination of reasonableness is reached after an evaluation of all the facts and circumstances of the case. *See, In re Phillips, supra.* Having received only $4,340.00 as repayment on the loan, the Plaintiff sustained a loss as a proximate result of the Debtor's representations. Thusly, the totality of (1) sched-

ules and exhibits showing outstanding balances on debts existing at the time of the loan; (2) the Debtor's § 341 meeting certification that he had never been engaged in business; and (3) controverted testimony clearly reveal that the Debtor's conduct fully meets the proscriptions of § 523(a)(2)(A) rendering his debt to the Plaintiff nondischargeable.

Accordingly, the subject debt is nondischargeable, and judgment is hereby rendered favorable to the Plaintiff. Costs and attorney's fees are awarded to the Plaintiff.

IT IS SO ORDERED.